Argued and submitted September 23, 1987, affirmed June 22, reconsideration denied November 10, petition for review pending 1988

# RANDY LARSON,
*Petitioner,*

*v.*

# STATE BOARD OF PAROLE,
*Respondent.*

## (38516; CA A43185)

756 P2d 674

Michael E. Swaim, Salem, argued the cause for petitioner. With him on the brief was Swaim, Betterton & Eder, P.C., Salem.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and David L. Kramer, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioner was convicted of murder and sentenced to life imprisonment. He seeks review of a parole board order which set his release date at 185 months according to the matrix for murder, subcategory (1), plus an aggravating factor of "after death, extreme mutilation of corpse." He assigns as error that the Board purported to exercise jurisdiction to set his release date, because at the time it made the decision only four members reviewed it. One Board position was vacant. We affirm.

ORS 144.054 provides:

"Whenever the State Board of Parole makes a decision affecting a person sentenced to life imprisonment or convicted of a crime involving the death of a victim, whether or not the prosecution directly charged the person with causing the death of the victim, the decision affecting such person must be reviewed by the full membership of the board."

Although the statute does not define the term "the full membership of the board," petitioner asserts that it means that five members must review the decision. The Board responds that "nothing in the statute, nor the administrative rule [*infra*], suggests that the board * * * work must stop dead in its tracks when a vacancy occurs." We hold that the Board had authority to set petitioner's release date even though, because of a vacancy, only four members reviewed that decision.

ORS 144.005 provides:

"(1) A State Board of Parole of five members hereby is created. At least one member must be a woman.

"(2) Members of the board shall be appointed by the Governor and serve for a term of four years. If there is a vacancy for any cause, the Governor shall make an appointment to become immediately effective for the unexpired term. The Governor at any time may remove any member for inefficiency, neglect of duty or malfeasance in office.

"(3) Each member shall devote the member's entire time to the performance of the duties imposed on the board and shall not engage in any partisan political activity.

"(4) The members shall receive a salary set by the Governor. In addition, all members may receive actual and necessary travel and other expenses incurred in the performance of

their official duties within limits as provided by law or under ORS 292.220 and 292.230.

"(5) The Director of the Department of Corrections shall serve as an ex officio nonvoting member of the board."

Because the Director of the Department of Corrections is by statute an *ex officio* nonvoting member of the Board, we conclude that the legislature intended that the reference in ORS 144.054 to "the full membership of the board" not include him. The legislature also contemplated that there could be vacancies in the voting membership. ORS 144.005(2) requires that the governor make an appointment to fill a vacancy "to become effective immediately for the unexpired term," but does not command that the governor make an immediate appointment. Undoubtedly, the legislature also contemplated that a voting member at times might need to disqualify himself from voting on a particular issue because of a conflict of interest. In the context of the overall statutory scheme, we conclude that the legislature did not intend that the term "the full membership of the board" mean five voting members, if the Board only had four voting members because of a vacancy or a disqualification.

The legislature, moreover, did not specify that *five* voting members of the Board must review decisions under ORS 144.054, although it specified arithmetic numbers of members for other purposes. ORS 144.035(2) refers to panels of at least two members; ORS 144.110(2)(a) provides that the Board may override judicial minimum terms only upon the affirmative vote of at least four members. Had the legislature intended to require that five voting members of the Board must at all times review decisions under ORS 144.054, it could have said so specifically. Furthermore, under petitioner's interpretation, if a vacancy existed, the Board could not act until it was filled. If a voting member were disqualified from review of a decision under ORS 144.054 because of a conflict of interest, the Board could *never* review the decision. We construe the term "the full membership of the board" to mean all voting members of the Board holding office and not disqualified from voting.

■ Petitioner argues, however, that in OAR 255-30-015(2), the Board has interpreted the term "the full membership of the board" to mean that five voting members of the

Board must at all times review the decision to set his release date. He asserts that we are bound by that interpretation. OAR 255-30-015(2) provides:

"The following cases shall be decided by the full Board (*i.e.,* all five voting members) according to the procedures in rule 255-30-020:

"(a) Any cases involving a prisoner sentenced to life imprisonment; convicted of a crime involving the death of the victim, whether or not the prosecution directly charged the prisoner with causing the death of the victim; sentenced under ORS 161.725 and 161.735 as a dangerous offender;

"(b) Whenever a panel recommends a decision to exceed the allowable variation from the matrix permitted to the panel or deny parole;

"(c) Whenever a minimum sentence imposed by a judge pursuant to ORS 144.110 exceeds the applicable matrix guideline range in Exhibit C plus the maximum variation from the range shown in Exhibit D;

"(d) Whenever a panel recommends a decision below a judicially set minimum sentence;

"(e) Whenever an extension of a prison term due to institutional misconduct for more than one (1) year is recommended."

The Board rules refer to consideration by "the full Board" in several instances: *see, e.g.,* OAR 255-30-020; OAR 255-30-030; OAR 255-35-022; OAR 255-35-030; OAR 255-35-035; OAR 255-50-010; OAR 255-60-005. Although the parenthetical material, "(*i.e.,* all five voting members)," appears in OAR 255-30-015(2) and is not repeated in other rules, we conclude that it was intended to apply whenever the rules use the term "the full Board." We read OAR 255-30-015(2), however, consistently with the statute.[1] Accordingly, we hold that the Board had jurisdiction to set petitioner's release date.

Petitioner next argues that the Board erred when it found "aggravation," because he asserts that the aggravating

---

[1] The rules make clear that "the full Board" does not include the *ex officio* nonvoting member. OAR 255-10-005 provides:

"The Board of Parole shall consist of five (5) voting members, appointed by the Governor, and the Administrator of the Corrections Division, who shall have no vote but act as an advisor."

factor is a defining element of the subcategory of his crime. OAR 255-35-035(1)(b) provides:

"Any aggravating or mitigating circumstances which constitute a defining element of the crime or subcategory of the crime being rated, or which resulted in a lower history/risk score, shall not justify variation from the guidelines."

Petitioner's crime category was murder, subcategory (1), which the Board defines as:

"Stranger to stranger; cruelty to victim; prior conviction for Murder or Manslaughter; evidence of significant planning or preparation." OAR Ch. 255 Exh. A.

The Board placed petitioner in subcategory (1), because of evidence of "significant planning or preparation" of the murder. It found as the aggravating factor, "after death, extreme mutilation of corpse," which petitioner acknowledges is not a defining element of murder, subcategory (1) in the rule. He argues that, at the beginning of the hearing, the Board told him that the aggravating factor was "cruelty to victim," which is a defining element of subcategory (1). He asserts that the Board recharacterized that conduct later in the hearing to avoid the prohibition of OAR 255-35-035(1)(b). He also argues that there is no evidence that petitioner, rather than his co-defendant, committed the acts.

 Petitioner correctly asserts that a defining element of a subcategory may not be used as an aggravating factor. There is, however, substantial evidence to support the Board's finding of aggravation, based on petitioner's "after death, extreme mutilation of corpse." ORS 183.482(8)(c). Moreover, the Board could recharacterize the aggravating factor on the basis of that evidence.[2]

██ Petitioner also contends that the Board could not make a finding of aggravation ten years after his incarceration, after numerous earlier reviews of his prison term. He requested an administrative review, however, so that the Board could consider his parole release date for the first time

---

[2] At a previous hearing, the Board had increased petitioner's term by thirty-six months, relying on the aggravating factor of "extreme cruelty to victim." Petitioner sought review of that decision. The Board withdrew its order and held the hearing which produced the challenged order.

under the matrix system. The Board could consider the underlying circumstances of the conviction to determine if aggravation existed. OAR 255-35-013(1).

Affirmed.